IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
01 AUG -6 PM 2:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
AUG 06 2001

EDWARD DAVIS, )
)
    Plaintiff, )
)
v. ) Case No. CV-99-TMP-407-S
)
TOGO D. WEST, JR., Secretary )
of Veterans' Affairs, )
)
    Defendant. )

### MEMORANDUM OPINION

    This cause is before the court on the motion for summary judgment filed by the defendant, Togo D. West, Secretary of Veterans' Affairs and representative of the Birmingham Department of Veterans' Affairs Medical Center ("BVAMC") on July 26, 2000. Defendant seeks dismissal of all of plaintiff's race and age discrimination claims because, defendant contends, there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law. This matter has been fully briefed, and this court has considered the evidence and the arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court enters this memorandum opinion.

### I. FACTS

    Plaintiff Edward Davis brought this action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*,

("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging that he was wrongfully denied a promotion on the basis of his race and age. Davis is an African American male, who was born in 1931.

Plaintiff's discrimination claims arise from his employment as a health technician at the BVAMC. Davis worked at the medical center as a health technician in surgical services for more than thirty years before retiring in 1998.[1] During the times relevant to the lawsuit, the BVAMC employed 14 other health technicians. Of those 14, three worked in ophthalmology or optometry, one in the vascular lab, one in orthopedics, eight in cardiovascular care, and one in a supervisory position. The supervisory health technician was ranked as a Grade Nine, the others were Grades Eight, Seven, and Six. Of the 14, ten were white, one a Pacific Islander, one Asian, and two black. Both of the black employees, like Davis, were ranked at Grade Six, as was one white technician.

When Davis first began working with BVAMC in the 1960s, he was hired as a Grade Five health technician. From 1994 until his retirement, Davis worked as a health technician in the ambulatory surgery unit, assisting the physicians who performed the surgeries,

---

[1] The complaint asserts that Davis worked at the BVAMC for 42 years and was still employed when the complaint was filed. In the response to the motion for summary judgment, however, plaintiff's counsel asserts that Davis worked at the BVAMC for 32 years and that he retired months before the complaint was filed.

2

maintaining supplies and equipment, and providing patient care. The surgeries performed in the center were considered minor and did not require the administration of general anesthesia. Davis was supervised at all times relevant to this action by Dr. John Gleysteen, Chief of Surgery. Davis was the only health technician assigned to the ambulatory surgery unit. After Davis retired in 1998, the position was eliminated.[2]

In 1977, Davis first sought a reclassification of his rank as a Grade Five. At about that same time, Davis received a brochure published by the then-existing Civil Service Commission titled "Medical Technician Assistant Aid." The brochure outlined the requirements of various positions in federal jobs. One position listed was "Health Technician," which was described as a GS-5-9. Defendant concedes that the description allowed for the classification of health technicians as Grades Five, Six, Seven, Eight or Nine. Davis asserts that the brochure amounts to a "promise" from the employer that he would eventually attain a Grade Nine rank as a health technician.

---

[2] Davis complains that in 1998, he was reassigned from Surgical Services to Nursing Services and was to be supervised by a nurse. He considered the assignment a "downgrade" and claims that the reassignment is the reason he retired at that time, although he would have preferred to continue working had he been allowed to continue in his surgery position. However, Davis has not asserted in his complaint any retaliatory discharge or constructive discharge claim and the court will not address such.

The classification of health technicians at the times relevant to this lawsuit depended primarily upon the "position descriptions" on file, which described the duties and responsibilities of each individual. Supervisors periodically updated the position descriptions as the employees' job duties changed or evolved. Gleysteen submitted updated position descriptions for Davis's job in 1993, with an amendment in 1995. Davis's classification as a Grade Five Health Technician did not change until 1995, when he was upgraded to a Grade Six. The 1995 upgrade resulted from a consistency review of all the Grade Five health technicians employed at the BVAMC. Carol McFadden, a classification specialist in the personnel department of the BVAMC, performed the consistency review. She began by examining Davis's position description prepared by Gleysteen, which Davis contends did not include all of the duties and responsibilities that he had. Specifically, Davis contends that the position description should have included a statement that Davis trained first- and second-year residents, received patients in clinics, assisted doctors in examining patients, admitted patients to the hospital, and received patients in the operating rooms and discharged them after surgery, with referrals back to clinics. Gleysteen's description stated that Davis was required to "assist and direct first year residents in surgical and special procedures," "assist surgeons with examinations," and "assist physicians in the rehabilitation and

4

post-operative care of the patient by ... initiating physician referrals."

Based on the position description, McFadden assigned numerical values to the factors set forth in the standards manual provided by the office of Personnel Management. Upon a tally of the numerical ratings, McFadden determined that Davis should be upgraded to a Grade Six Health Technician. McFadden rated Davis at the top numerical rating in six of the nine categories, but rated him in the middle rating in three categories, based on an assessment of the: (1) knowledge required by the position; (2) guidelines provided for the duties; and (3) complexity of the tasks performed. Health Technicians adjudged to: (1) require the highest level of knowledge, (2) have the most flexibility in performing procedures, and (3) perform the most complex tasks were given the highest ratings. The review was conducted late in 1994, and the upgrade became effective early in 1995. At the time she made the upgrade, McFadden did not know Davis's age or race.

On July 5, 1995, Davis first contacted an EEO counselor to complain that he had not been promoted to a Grade Nine on the basis of his race and age. Davis complained to the EEO counselor again in October of 1995.[3] On February 22, 1999, Davis filed the

---

[3] It is not entirely clear what date Davis told the EEO officer the discriminatory act occurred. The form filled out by the EEO counselor lists the "date occurred" as October 18, 1995, although the same document reports that the initial contact was

5

complaint commencing this action, asserting that the BVAMC "knowingly placed Plaintiff in the wrong job classification to keep from promoting him" and repeatedly denied him promotions while routinely promoting younger, white health technicians.

The defendant moved for summary judgment on all of Davis's claims, asserting that the plaintiff has failed to: (1) state a prima facie case of race or age discrimination; (2) demonstrate that the non-discriminatory reason given for plaintiff's job classification was a pretext; and (3) timely raise and exhaust any other allegations of discrimination.[4]

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of

---

made prior to that date on September 27, 1995.

    [4]   In deposition, the plaintiff repeatedly stated that he was first discriminated against in the 1970s, when he sought a reclassification, and that he was repeatedly denied promotions thereafter. However, plaintiff's EEO complaint clearly limits his claim to the reclassification in 1995, and the court finds that any claims arising from actions prior to 1995 are both time-barred and unexhausted.

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

7

element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v.

8

Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. Discussion

#### A. Prima Facie Case

Plaintiff's claims arise from the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., ("ADEA") and from Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. The ADEA prohibits an employer from using the employee's age as a determining factor in any adverse employment actions. See Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453 (11th Cir. 1997). Similarly, Title VII prohibits an employer, including the federal

9

government, from discriminating against an employee on the basis of race. See, e.g., Holifield v. Reno, 115 F.3d 1555 (11th Cir. 1997).

In order to survive a motion for summary judgment, the plaintiff in an age discrimination case first must establish a *prima facie* case by showing that he "(1) was a member of the protected age group, (2) was subjected to an adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). Similarly, to establish a *prima facie* case of race discrimination in the promotion, the plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied for and was qualified for the position that he sought; (3) he was rejected for the position; and (4) the position was filled by a person outside the protected class who had lesser or equal qualifications. Combs v. Plantation Patterns, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998), citing Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988), cert. denied, 490 U.S. 1006, 109 S. Ct. 1641, 104 L. Ed. 2d 156 (1989).[5]

---

[5] The Eleventh Circuit Court of Appeals has stated that because the prohibitions set forth in the ADEA were derived from Title VII, decisions interpreting Title VII are highly relevant to ADEA actions. E.E.O.C. v. Reno, 758 F.2d 581 (11th Cir. 1985).

In order to establish the *prima facie* case of age or race discrimination, a plaintiff may present to the court: (1) direct evidence that "discriminatory animus played a significant or substantial role in the employment decision," Eskra v. Provident Life and Accident Insurance Company, 125 F.3d 1406, 1411 (11th Cir. 1997), or (2) circumstantial evidence of discrimination, in accordance with the four-part test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973), or (3) statistical evidence of a pattern of discrimination. Zaben, 129 F.3d at 1457.

Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without requiring the factfinder to make any inferences or presumptions. Carter v. City of Miami, 870 F.2d 578, 580-81 (11th Cir. 1989). When the plaintiff relies upon circumstantial evidence, rather than direct evidence, he creates a presumption of discrimination by establishing a *prima facie* case. The presumption may be rebutted, however, if the employer offers a legitimate, nondiscriminatory reason for the employment action. Once the nondiscriminatory reason is articulated, the burden shifts to the plaintiff to show that the reason is either not worthy of belief, or that, in light of all the evidence, a discriminatory reason more likely motivated the decision than the proferred reason. Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998) reh'g and reh'g

*en banc* denied, 172 F.2d 884 (11th Cir. 1999), citing <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).

In this case, Davis does not offer any direct evidence of discrimination. He attempts to show circumstantial and statistical evidence of age and race discrimination, asserting that he was treated differently than younger, white health technicians in the same situation. As statistical evidence of discriminatory promotion practices, Davis offers a chart showing that all of the health technicians ranked above Grade Six were white (or non-African-American) and that the only two African-Americans, like Davis, were ranked at a Grade Six.[6] Davis does not offer any evidence of any discriminatory animus on the part of his supervisor who wrote the position description, or on the part of the personnel manager who ultimately made the decision about classification of the plaintiff's job. Neither does Davis offer any evidence that might make the chart probative, because he fails to supplement the defendant's chart with any statistical data concerning the employees' qualifications or duties, or any statistical comparison to the pool of applicants or employees eligible for the "upgrade" sought by Davis. See <u>Hall v. Martin Marietta Energy Systems</u>, 856

---

[6] Although the ages of the employees listed on the chart are not provided, the defendant does not dispute that the employees ranked at Grades Seven, Eight, and Nine were younger than the plaintiff, who was in his 60s at the times relevant to this action.

F. Supp. 1207 (W.D. Ky. 1994), aff'd 54 F.3d 776 (6th Cir. 1995). The only evidence offered at summary judgment concerning the 14 other health technicians employed by the BVAMC demonstrates that the classification system was based upon a subjective evaluation of duties and responsibilities, governed by written standards and applied without regard to the age or race of the employee.[7]

Essentially, the court must determine whether the plaintiff has presented competent admissible evidence that BVAMC failed to promote Davis beyond a Grade Six because of his race or age. See United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403 (1983). It is not the duty of this court to evaluate whether the decision not to promote Davis was fair or wise; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991). Questionable business judgment is not evidence of discrimination. See id. Moreover, courts have recognized that the ADEA should not be used to override employment decisions "based on individual assessments of a person's abilities, capabilities, or potential." Magruder v. Selling Area Mktg. Inc., 439 F. Supp. 1155 (N.D. Ill. 1977)

---

[7] The evidence submitted by defendant on this issue includes the affidavit of McFadden, as well as the depositions of McFadden and Gleysteen.

To meet the initial burdens required by Eleventh Circuit precedent in establishing an age or race discrimination case, Davis must show that he applied for and was qualified for the position he sought, in this case a Grade Seven, Eight, or Nine classification. See, e.g., Williams v. Vitro Servs. Corp., 144 F.3d 1438 (11th Cir. 1998).[8] It is on this factor that the court finds the plaintiff has failed to present a *prima facie* case of either race or age discrimination. First, Davis admitted that he did not want to leave his position in ambulatory surgery. He does not allege, and there is no evidence to show, that he ever applied for any position that was classified at a higher grade. To the contrary, Davis simply requested that his present position be reclassified at a higher grade. Accordingly, there is no evidence that Davis "applied for" any position that would constitute a promotion.

Davis, on the other hand, argues that his request for a reclassification was akin to applying for a promotion. Assuming *arguendo* that Davis met the "applied for" requirement, the court still finds that he failed to present a prima facie case because he has failed to show that he was "qualified for" a classification above a Grade Six. To attain a Grade Seven or higher rating, Davis would have to have earned a higher numerical rating on the Factor Evaluation System employed by the BVAMC personnel office in

---

[8] It is undisputed in this case that the health technicians ranked at Grade Seven or higher were white and/or younger than the plaintiff.

14

assigning ranks to the various health technician positions. McFadden has explained that the higher numerical rating would require that Davis (1) perform different and more complex duties, (2) operate with more independence from standards and procedures, (3) perform research or exercise more independent judgment, and/or (4) supervise other employees. Davis alleges that his duties were as complex as those working in, for example, the cardiovascular unit, and that occasionally consulting manuals or guides constitutes the kind of research and independence required. McFadden disagrees, and the reasons that Davis's duties were not deemed sufficiently complex, or his work not sufficiently independent, are set out in the evidence submitted and have not been refuted by Davis, except to state Davis's own opinion. Even though Davis may hold the opinion that his work was equally "complex" as the work of technicians in cardiovascular care or ophthalmology, Davis's own opinion that his work was complex does not govern. It is clear that the BVAMC deemed work with cardiovascular patients to require more judgment and technical skill than Davis's job required, and so long as the BVAMC reaches that conclusion for any reason other than a discriminatory one, its own medical or business judgment must be honored by this court. It also follows that, although Davis asserts that his work with resident surgeons amounted to supervision of them, Gleysteen denied that Davis's actions amounted to supervision of the doctors, and

15

there is no reason this court should be allowed to override Gleysteen's judgment, absent some showing that he was motivated by race or age animus to so catergorize Davis's duties. In addition, Davis admits he never evaluated or ranked any other employees.

It also is important to note that Davis has not alleged that he was qualified for, or wanted, a position as a cardiovascular health technician, a vascular lab health technician, or an optometry health technician, which were ranked above Grade Six and which required duties considered by the BVAMC to be more complex and technical. Accordingly, because the plaintiff has failed to demonstrate a prima facie case of either age or race discrimination, the defendant's motion for summary judgment is due to be granted.

### B. Non-discriminatory Reason

Even if the plaintiff had met his initial burdens in proving a *prima facie* case of age or race discrimination, the defendant still would be entitled to summary judgment in its favor. The BVAMC has set forth a legitimate, non-discriminatory reason for failing to promote Davis. McFadden, the decision-maker, testified that she classified Davis as a Grade Six Health Technician based upon her assessment of his job duties and the requirements set forth in the standards. McFadden has set forth in detail her reasons for assessing Davis in the "middle range" of points for the only factors on which he was not graded at the highest level.

16

Davis argues that McFadden's assessment is wrong, and that he did perform "complex technical" tasks and supervise residents. However, even if McFadden had been wrong, or misguided, or even incompetent, such conduct does not give rise to a discrimination claim. There is simply no evidence whatsoever that McFadden's nondiscriminatory reason - that she felt his duties fell within the Grade Six range - is a pretext. She has testified, and Davis has failed to refute, that she was unaware of Davis's race or age when she classified his job. Furthermore, because there are no other health technicians who worked in the ambulatory surgical center, Davis cannot show that any other health technician was promoted beyond a Grade Six for similar work. Even more telling is McFadden's explanation that all of the health technicians who attained a Grade Seven or higher were in those positions after having applied for higher-rated positions, and after competing for those positions against other applicants. Davis admits he never applied for a higher position, such as a cardiovascular health technician. Rather, Davis happily chose to continue in the same position, performing the same duties, and retaining the same level of responsibility. He now complains simply that he should have been awarded a higher classification. Again, there is no evidence that any other health technician was reclassified upon request into a higher grade, as Davis sought to be.

Because the defendant has offered a legitimate, nondiscriminatory reason for the classification of Davis as a Grade Six, Davis must, in order to overcome the defendant's motion for summary judgment, demonstrate by competent, admissible evidence that the nondiscriminatory reason is merely a pretext and that the BVAMC's true reason is age- or race-based discrimination. The reason given by the employer "cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993). Furthermore, the court should determine whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's articulated reason for the termination that it is "unworthy of credence." Combs, 106 F.3d at 1538 (citations omitted).

The court finds little or no support for plaintiff's argument that the proferred explanation is a pretext. While the court may question BVAMC's apparent reluctance to reclassify the man they tout as an excellent employee, the BVAMC nevertheless has the right to determine the proper classifications for its employees, so long as the classifications are not unlawfully applied to employees in a protected group. Consequently, the court finds that the defendant's articulated nondiscriminatory reason has not been shown to be unworthy of belief, and age or race animus has not been shown

to be the more likely reason for Davis's classification. Davis has failed to meet his secondary burden of showing that BVAMC's stated reason for the classification was pretextual; consequently, Davis's claims of age and race discrimination are subject to summary judgment in favor of the defendant under the <u>McDonnell Douglas</u> test as adopted by the Eleventh Circuit. <u>Williams</u>, 144 F.3d at 1441.

## IV. CONCLUSION

Based on the foregoing undisputed facts and legal conclusions, the court determines the motion for summary judgment filed by the defendant is due to be granted and this action dismissed with prejudice.

A separate order will be entered in accordance with the findings set forth herein.

DATED this 6th day of August, 2001.

*/s/ T. Michael Putnam*
T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE